# Mitchell, Judge &c. *v.* State *ex rel.* Florence Dispensary

and

# Powers *v.* Mayor and Aldermen of the City of Florence.

*Petition for Mandamus; and Prosecution for Violation of Dispensary Statute.*

1. *Constitutional law; act establishing Florence Dispensary not violative of section 2, Article IV of the Constitution of 1875.*—The act approved December 10, 1900, entitled "An act to establish and maintain, regulate and make efficient a dispensary in Florence and a branch thereof in that part of Flo-

[Mitchell, Judge, etc. v. State *ex rel.* Florence Dispensary; and Powers v. Mayor and Aldermen of the City of Florence.]

rence known as East Florence, Lauderdale county, Alabama, and to provide for the issuance of liquor licenses in Lauderdale county until this act goes into effect," (Acts of 1900-1901, p. 288,) is not violative of section 2, Article IV of the Constitution of 1875, upon the ground that it contains two subjects since there is but one subject contained in the act, and but one subject expressed in the title; and the provisions of the act providing for the issuance of liquor licenses in Lauderdale county until the dispensary should be put into operation, are cognate, germane and complementary to its provisions for the establishment and carrying on of the dispensary; and the fact that a more particular expression as to such provision is made in the last clause or sentence of the title is of no consequence.

2. *Same; act unconstitutional because it seeks to delegate legislative powers.*—The act approved December 10, 1900, entitled "An act to establish and maintain, regulate and make efficient a dispensary in Florence, and a branch thereof in that part of Florence known as East Florence, Lauderdale county, Alabama," etc., is unconstitutional and void, in that it seeks to confer upon the commissioners therein named, and their successors or the corporation itself, the power to manage, carry on, and, if they see fit, suspend or discontinue the dispensary, and the power to determine what police regulations shall obtain in Lauderdale county in respect of intoxicating liquors, and also the power of determining and regulating the police of the city in respect of the liquor traffic in Lauderdale county; such powers being powers reserved exclusively to the legislature.

APPEALS from the Circuit Court of Lauderdale.
Tried before the Hon. E. B. ALMON.

These two cases are submitted together, inasmuch as they involve the construction of the same statute. The case of Mitchell, Judge, etc. v. The State ex rel Florence Dispensary, was instituted by the Florence Dispensary filing a petition addressed to Hon. E. B. Almon, judge of the eleventh judicial circuit, in which it was averred that the petitioner was a corporation duly organized under and by virtue of the act of the general assembly approved December 10, 1900, entitled "An Act to establish and maintain, regulate and make efficient a dispen-

[Mitchell, Judge, etc. v. State *ex rel.* Florence Dispensary; and
    Powers v. Mayor and Aldermen of the City of Florence.]

sary in Florence, and a branch thereof in that part of
Florence known as East Florence, Lauderdale county,
Alabama. And to provide for the issuance of liquor li-
censes in Lauderdale county until this act goes into
effect," (Acts of 1900-1901, p. 288) ; that on July 1,
1901, the commissioners named in said act having prev-
iously met and organized and elected a manager and
branch manager pursuant to the terms of the said act,
established in said city a dispensary and branch thereof
as provided in said act; that upon the establishment of
said dispensary the petitioner applied to Hon. J. J.
Mitchell, judge of probate of Lauderdale county, for a
State liquor license for each place of business as pro-
vided by section 18½ of said act, for a period of six
months; that at the time of the passage and approval
of the act creating the petitioner, the license required
by law for retail liquor dealers was $275 per annum,
or $137.50 from July 1 to January 1, for each place of
business, which sum the petitioner tendered and offered
to pay said Mitchell as judge of probate; but that said
judge was of the opinion that the petitioner was not
entitled to receive the license pursuant to the terms of
said special act under which the petitioner was incorpo-
rated, and declined and refused to accept the sum of
$275 in payment of this license for the period of six
months; that said judge was of the opinion that the
annual license to be paid to the State by the petitioner
was $1,925 to be paid in quarterly installments; that
the petitioner paid to the probate judge the sum of
$481.25, it being one fourth of the annual demand for
an annual license, and thereupon said judge issued to
the petitioner the said license for three months; that
the petitioner is advised, informed and believes and so
avers that it has paid to the probate judge the full
amount of the license required by law for the period of
six months and more, and is, therefore, entitled to re-
ceive from said probate judge a State license or a receipt
for the license tax so paid for the period from July 1,
1901, to December 31, 1901.

The prayer of the petition was for a writ of *mandamus*

directed to the said Hon. J. J. Mitchell, judge of the probate court of Lauderdale county, commanding him to issue to the petitioner a license or receipt for the period from July 1, to December 31, 1901.

To this petition the respondent demurred upon the following grounds: 1. That the act under which the petitioner claims to have been organized is unconstitutional and void in that it is in violaton of section 2 of article IV of the Constitution of Alabama of 1875. 2. That said act does not seek to confer authority on the City of Florence in its corporate name or capacity or through its legislative body to carry on the business of buying, selling spirituous, vinous or malt liquors, but seeks to confer such special privilege and authority upon petitioner, a corporation, which is to be controlled by certain individuals. This demurrer was overruled, and, thereupon, the respondent filed an answer in which he pleaded the unconstitutionality of the act under which the petitioner was incorporated, upon the same grounds upon which the demurrer was based.

Upon the hearing of the cause, the facts averred in the petition were substantially proved.

After the introduction of all the evidence, the court rendered judgment granting the relief prayed for in the petition and ordering the writ of *mandamus* to be issued to said J. J. Mitchell as judge of the probate court of Lauderdale county, commanding him to issue a license or receipt as prayed for in the petition.

From this judgment the respondent appeals, and assigns as error the overruling of the demurrer to the petition, and the rendition of said judgment.

In the case of Powers v. The Mayor and Aldermen of the City of Florence, a prosecution for selling, giving away or otherwise disposing of spirituous, vinous or malt liquors in a public place in the city of Florence against the peace and dignity of the State of Alabama, was commenced against the appellant, W. B. Powers, by a complaint or an affidavit sworn out before a justice of the peace.

On the trial before the justice of the peace, the defendant was found guilty as charged, and from this judg-

[Mitchell, Judge, etc. v. State *ex rel.* Florence Dispensary; and Powers v. Mayor and Aldermen of the City of Florence.]

ment of conviction an appeal was taken to the circuit court. In the circuit court the Mayor and Aldermen of Florence filed a statement or declaration which, as amended, was in words and figures as follows: "The Mayor and Aldermen of the City of Florence charge that within twelve months before the commencement of these proceeding, W. B. Powers did within the city of Florence sell, give away or otherwise dispose of spirituous, vinous or malt liquors or intoxicating beverages at a public place and subsequent to the first day of July 1901, against the peace and dignity of the city and contrary to its ordinances in such cases made and provided in words and figures as follows: 'An ordinance. Whereas the general assembly of Alabama has passed an act providing for a dispensary in the city of Florence to go into effect on the 1st day of July, 1901, and whereas it is the intention and duty of this board to restrict the sale and distribution of liquors in this city in conformity to the provisions of said act; therefore be it ordained by the Mayor and Aldermen of the city of Florence, that on and after the 1st day of July, 1901, it shall be unlawful for anyone within the corporate limits or police jurisdiction of this city, except as provided in said dispensary act, to sell, give away or otherwise dispose of any spirituous, vinous or malt liquors or intoxicating beverages at or in any hotel, restaurant, eating house or any other public place, and for every violation of this ordinance, the party shall be fined not less than one hundred dollars and shall also be sentenced to hard labor for the city for not less than thirty days. Be it further resolved that the police force are directed to see that the above law is upheld in spirit and letter. Adopted June 24, 1901." To this declaration the defendant demurred upon the following grounds: 1. "That said statement charges no offense against the municipal laws or ordinances of the said city of Florence." 2. "That any ordinance of the said city of Florence by which the acts of the defendant complained of or charged are made unlawful or prohibited, is unconstitutional, null and void." 3. "That any act, or statute of the leg-

islature of the State of Alabama by or under which it
is sought or attempted to adopt any ordinance of the
city of Florence, prohibiting or making unlawful the
acts of the defendant set forth or complained of in said
statement is unconstitutional, null and void." This
demurrer was overruled, and to this ruling the defend-
ant duly excepted.

Upon the hearing of the cause, there was evidence in-
troduced tending to show that the defendant did sell
liquor in the town of Florence, and the ordinance which
was set forth in the declaration was proved and intro-
duced in evidence.

Upon the introduction of all the evidence, the court
at the request of the defendant, gave to the jury the
following written charge: "If the jury believe the evi-
dence beyond a reasonable doubt, they will find the de-
fendant guilty." The defendant duly excepted to the
giving of this charge, and also excepted to the court's
refusal to give the following charge requested by him:
1. "If the jury believe the evidence, they should find for
the defendant."

There were verdict and judgment in favor of the
Mayor and Aldermen of Florence, assessing a fine of
one hundred dollars. From this judgment the defend-
ant appeals, and assigns as error the several rulings
of the trial court to which exceptions were reserved.

CHAS. G. BROWN, Attorney-General, for Mitchell,
Judge, etc.

R. T. SIMPSON and JOHN T. ASHCRAFT, for the State
*ex rel.* Florence Dispensary.—We maintain that the spe-
cial act is not unconstitutional. It does not violate Sec-
tion 2, of article IV, of the Constitution.

"The evil intended to correct" by this constitutional
provision was the "blending in one and the same statute
of such things as were diverse in their nature, and were
connected only to combine in favor all the advocates of
each, thus often securing the passage of several meas-
ures, no one of which could have succeeded on its own
merits."—*Walker v. The State,* 49 Ala. 330-1; Cooley on
Const'l Lim. 143; *Mobile Transportation Co. v. City of*

*Mobile,* 128 Ala. 335; *State v. McCary,* 128 Ala. 39. "Whenever there is a natural and proper relation of the provisions embodied in the statute" to each other, the constitution is not violated.— *Ex parte Hickey,* 52 Ala. 230; *Walker v. Griffith,* 60 Ala. 361-8; *Ballentyne v. Wickersham,* 75 Ala. 533-9; *City Council of Montgomery v. Nat'l B. & L. Assn.,* 108 Ala. 336-9; *Sheppard v. Dowling,* 127 Ala. 11.

THOS. R. ROULHAC and ALEX. E. WALKER, for Powers. The police power of the government, in the distribution of the governmental functions among the different departments of the sovereign state, is vested in its legislative department.—Constitution of Ala. 1875, Art. IV., Sec. 1; *McDonald v. The State,* 81 Ala. 282; *N. C. & St. L. R. Co. v. The State,* 83 Ala. 76; *N. C. & St. L. R. Co. v. The State,* 128 U. S. 96.

The control and regulation of the liquor traffic, or even its absolute prohibition, is embraced within the police power of the State, and may be exercised by the legislature in its discretion.—*Dorman v. The State,* 34 Ala. 216; *In re Jones,* 78 Ala. 419; *Van Hook v. Selma,* 70 Ala. 361; *Ex parte Byrd,* 84 Ala. 17; *Ex parte Sikes,* 102 Ala. 173; *Sheppard v. Dowling,* 127 Ala. 11 (62).

Not only may the legislature exercise this power of regulation or control or prohibition of this traffic, but it may delegate the exercise and execution of this power to counties and municipal corporations; because each of these is but a branch, agency or subordinate department of the State for governmental purposes. They are integral parts of the government.—*Sheppard v. Dowling,* 127 Ala. 11; *Dunn v. Wilcox County,* 85 Ala. 144; *Yuille v. Mayor, etc.,* 3 Ala. 137; *Ex parte City Council,* 64 Ala. 463; *VanHook v. Selma,* 70 Ala. 361; *Ex parte Byrd,* 84 Ala. 17.

But having this police power and the right to exercise it through, or to delegate it to, other agencies of the government, not even the legislature can go further than this. It cannot divest or deprive itself of the police power, which has been entrusted to it, in the formation of the government; and it cannot exercise it, nor, of

course, authorize any one else, though a political institution and a different or subordinate department or agency of government, so that any of its regulations, restrictions, penalties or prohibitions shall not apply to all of its citizens, within the State, county, municipality or district, in like class, or under like conditions or circumstances.—*Am. Un. Tel. Co. v. Western Un. Tel. Co.,* 67 Ala. 32; *Montgomery v. State* 88 Ala. 143; *Dunn v. Wilcox,* 85 Ala. 147-8; *Shultes v. Eberly,* 82 Ala. 246; *Clark v. Mobile,* 69 Ala. 217.

The establishment or creating of the Florence Dispensary is, therefore, unconstitutional, because it attempts to delegate to a corporation or the commissioners powers which are reserved exclusively to the legislature. *Ex parte Marshall,* 64 Ala. 266; *L. & N. R. R. Co. v. Morris,* 65 Ala. 193; *Smith v. L. & N. R. R. Co.,* 75 Ala. 449; *Harrison v. Jones,* 80 Ala. 412; *McDonald v. The State,* 81 Ala. 279; *Carter v. Coleman,* 84 Ala. 256; *Youngblood v. B. T. & S. Co.,* 95 Ala. 521; Constitution of Alabama, 1875, Art. I, § 2; *Schultes v. Eberly,* 82 Ala. 244; *Randolph v. Supply Co.,* 106 Ala. 511; Cooley on Taxation, 63.

The act creating the Florence Dispensary was violative of the constitution in that it contains more than one subject and more than one subject was expressed on its title.—*City Council v. Nat. B. & L. Asso.,* 108 Ala. 339; *Ballentyne v. Wickersham,* 75 Ala. 536-7; *State v. Davis,* 130 Ala. 148; *Ex parte James Gayles,* 108 Ala. 515; *Ex parte Cowert,* 92 Ala. 94; *Davenport v. The State,* 112 Ala. 51; *Rice v. Westcott,* 108 Ala. 355; *Shehane v. Bailey,* 110 Ala. 310.

The title to a statute can not contain but one subject, and if it contains more than one the whole statute is void, because the courts cannot say, on which of the two subjects the general assembly would have legislated if it had selected but one of them, as the constitution requires, for the subject of its enactment. The distinction between the two cases and the difference of the rule of construction and its application and effect are clearly defined in *Ballentyne v. Wickersham, supra,* and upheld by all the subsequent decisions.—Cooley

Const. Lim., 176; *Bradley v. State,* 99 Ala. 177; *Bell v. State,* 115 Ala. 88.

This dispensary law can derive no aid or force from the power vested in the municipality of Florence, in its charter,—Acts of 1888-89, p. 691,—to regulate, restrain or prevent the sale of liquors within the city limits. The power to regulate, or restrain, or prevent, does not give power to establish a dispensary. The power to regulate or restrain, does not confer power to prohibit; and the power to prevent is only to prohibit entirely, not to deny the right to one and accord it to others, under like conditions and circumstances.—*In re Jones,* 78 Ala. 419; *Ex parte Burnett,* 30 Ala. 461; *Craig v. Burnett,* 32 Ala. 728; *Miller v. Jones,* 80 Ala. 89; *Ex parte Cowert,* 92 Ala. 94; *Ex parte Sikes,* 102 Ala. 173; *Ex parte Mayor etc.,* 90 Ala. 518; *Mayor etc. v. Yuille,* 3 Ala. 139; *L. & N. R. R. Co. v. Morris,* 65 Ala. 193; *B & P. Supply Co. v. Lucas,* 119 Ala. 209; *Lindsay v. U. S. S. & L. Co.,* 120 Ala. 172; *Montgomery v. State,* 88 Ala. 142.

SIMPSON & JONES, for the city of Florence, cited Sutherland on Statutory Construction, §§ 212, 213; Sedgwick on Construction of Statutes, p. 45.

McCLELLAN, C. J.—The main question presented in each of these cases is the constitutionality of an act approved December 10, 1900, entitled "An act to establish and maintain, regulate and make efficient a Dispensary in Florence, and a branch thereof, in that part of Florence known as East Florence, Lauderdale county, Alabama. 'And to provide for the issuance of liquor licenses in Lauderdale county until this act goes into effect.'" (Acts, 1900-1901, p. 288.)

In the first place it is insisted that the act contains two subjects, the establishment, etc. of a dispensary at Florence *and* the issuance of liquor licenses in Lauderdale county until the provisions as to the dispensary go into effect, in violation of the organic provision that "each law shall contain but one subject"; and that these two subjects are expressed in the title of the act in vio-

lation of the further provision that the one subject to
dealing with which all acts are confined "shall be clearly
expressed in its title."—Const. 1875, Art. IV, § 2. In the
consideration of this ground of attack on the constitu-
tionality of the enactment, we shall assume that all pro-
visions of the statute other than that with reference to
the issuance of liquor licenses to run up to the time for
the establishment of the proposed dispensary are covered
by the first clause of the caption, pertinent to the sub-
ject there expressed, and otherwise valid. So proceed-
ing, we do not find that the position is well taken. The
subject dealt with in the act is the establishment and
administration of a dispensary in Florence with a
branch at East Florence in Lauderdale county. The
purpose of the act as expressed in its title—its sub-
ject—is to establish and maintain, regulate and make
efficient a dispensary in Florence and a branch thereof
in that part of Florence known as East Florence, Lau-
derdale county, Alabama. Those of the provisions of
the act having relation to issuance of liquor licenses to
run up to the time the dispensary should be put into
operation are cognate, germane and complimentary to
its provisions for the establishment and carrying on of
the dispensary, necessary and proper, in view of exist-
ing law, to the rounding out and perfection of the new
system of dealing in liquors which the act proposed to
establish; and being so they are in legal contemplation
"clearly expressed" in the first clause or sentence of
the title of the act. That a more particular expression
as to such provisions is made in the last clause or sen-
tence of the title is of no consequence. Such expression
is not the setting forth of another and distinct subject
in the title, but the mere specification in or by way of
sub-title of a matter covered in a general but sufficient
way in the main title. The word "dispensary," and the
phrases "to establish a dispensary," and "to establish
and maintain a dispensary," etc. etc. had come before the
session of assembly of 1900-1901 to have general and well
understood meanings in the legislation of the State. The
"question of dispensary" or the "issue of dispensary"

26c

was the phrase in common and universal use when reference was had to the agitation prevalent throughout the State or in any county or municipality looking to committing and confining the sale of spirituous, vinous and malt liquors to governmental agencies and on governmental account. And wherever this had been done, it was said that "a dispensary had been established," and by that statement the fact that this traffic had been so committed and confined was as aptly and accurately and fully made known to the common apprehension as if every detail had been stated. There, of course, may be dispensaries for the disposition of the commodities other than these liquors, but when reference is made to them by the use of the word "dispensary," there must be some express differentiation else the reference will be understood to be to dispensaries of liquors. Especially is this true of the use of the word in legislation, for when it is proposed by a bill to establish a dispensary, everybody at once understands that it is a dispensary of spirituous, vinous and malt liquors which is proposed, and that the purpose is not only to authorize the sale of these liquors by agents of government but also and further to prohibit the sale of them by private persons. Indeed, the prime consideration underlying the establishment of dispensaries by law, that which is always put forward by moralists and sociologists in advocacy of legislation to that end, that which in their estimation outweighs the objection which many people have to bodies politic engaging in this traffic at all, is that the establishment of the dispensary by committing the dealing in these liquors to public agencies, which are presumably devoted and consecrated to the public welfare, and are without interest or incentive to augment their sales and thereby to increase profits, or to sell liquors of an inferior and deleterious quality, takes the traffic entirely out of the hands of private persons who lack the public agencies' consecration to the public good, who have interest and incentive to increase their sales, and to supply cheap and deleterious liquors, whose places of business must be inviting to loiterers, etc. etc.; and it is upon this

[Mitchell, Judge, etc. v. State *ex rel.* Florence Dispensary; and
Powers v. Mayor and Aldermen of the City of Florence.]

theory that statutes establishing dispensaries have here-
tofore proceeded. So that the corollary to the estab-
lishment of a dispensary is the prohibition of the sale
of liquors by private persons. So universal is the no-
tion that such prohibition is the prime purpose of such
statutes and so uniformly has such prohibition been
made part of them that the expression in the title of an
act of a purpose to establish a dispensary is the expres-
sion of a purpose to prohibit the selling of liquors by pri-
vate persons on private account, or, at least, there is
such correlation to the common understanding between
the establishment of the dispensary and the prohibition,
the latter is so cognate, germane and necessary to the
purpose of the former, as that it is covered by the expres-
sion and authorized under it. Hence it is that the title
of the act under consideration as set forth in its first
clause "to establish and maintain, regulate and make
efficient, a dispensary" etc. is to all legal intent the ex-
pression of a purpose to authorize the sale of liquors
by public agencies and to prohibit it by private persons,
to commit and to strictly confine the business to a pub-
lic agency. Theretofore it had been lawful for private
persons to engage in this business in Florence and per-
haps at other places in the county upon being licensed
so to do. The purpose of the act as evinced by its title
was to substitute the dispensary for the licensed deal-
ings by individuals, to substitute the system of govern-
mental traffic for the system of private traffic under li-
censes. It was deemed necessary to allow some time af-
ter the passage of the act for preparation to institute
the change contemplated. The act was approved De-
cember 10, 1900. It was not to go into effect in the
actual establishment of the dispensary and the taking
over thereby of this business until the first of the fol-
lowing July. There was no contemplation that the bus-
iness under license should cease until the business un-
der public agency should begin, but the contrary. Un-
der existing law, however, the licensed traffic could not
continue up to the inauguration of the dispensary traf-
fic, because there was no authority in the judge of pro-
bate to issue licenses to carry on this business from Jan-
uary 1st to July 1st, the statute authorizing licenses

only for the whole year when taken out prior to July
1st; and there was no authority after the passage of this
statute for that officer to issue licenses for the whole
year since this act, and properly under its main title,
prohibited sales under license after July 1st.   So that
it seems clear to us that the provision in this statute
for the issuance of licenses to run up to the time the
dispensary should go into operation, was, not only cog-
nate and germane and complementary to the subject ex-
pressed in the first sentence of its title, and referable
thereto, but further that it was *necessary* to the subject
so expressed, involving as that subject did, and as the
purpose of the act expressed in the title did when taken
in connection with the provision as to the time at which
the dispensary should go into full operation, the con-
tinuance of the traffic under license up to July 1st, 1901,
and the substitution on that day for traffic under license
the traffic by public agency.   Such substitution at that
time was the end the legislature had in view, to this sub-
stitution the continuance of the existing traffic was
necessary, and to such continuance the provision as to
the issuance of licenses for the first half of the year 1901
was essential.   The point is, we think, substantially de-
termined in the case of *Ex parte Mayor and Aldermen of
Birmingham*, 116 Ala. 186, and in *State ex rel. v. Grif-
fin et al.*, 132 Ala. 47; and upon these authorities and
the foregoing considerations, our conclusion is that but
one subject is expressed in the title to this act, and that
the provision for licenses extending up to July 1st, 1901,
is within the subject so expressed.   The cases of *Bradley
v. State*, 99 Ala. 177, and *State v. Davis*, 130 Ala. 148,
are distinguishable from the case at bar in this:   The
prohibition intended by the statutes under review in
those cases could be effected as well without their pro-
vision for refunding license money as with those provis-
ions, while in this case the purpose of the statute to
substitute one system of traffic in liquors for another on
July 1st, 1901, could not be fully effectuated without a
provision for the issuance of licenses running up to that
time. We adhere to these cases of *Bradley* and *Davis*, but

they mark the limit beyond which we will not go in declaring acts of assembly violative of § 2 of Art. IV of the constitution of 1875.

The other objections urged against the constitutionality of this act are that certain private persons and their successors are by it constituted a body corporate to inaugurate, carry on and, if they see fit, suspend or discontinue the dispensary, that the act confers police powers upon the corporation, that this entity is a *private* corporation, and that the act commits the liquor traffic in Lauderdale county to this private corporation to the exclusion from that business of all other private corporations and private persons. A statement in brief of the provisions of the act is necessary to a proper understanding and consideration of these objections to its constitutional integrity: The act itself appoints the first individuals who are to carry it into effect. There are five of them and they are appointed for terms of one, two, three, four and five years, respectively. On the expiration of the term of each, his successor is to be elected by the board of mayor and aldermen of Florence and the commissioner's court of Lauderdale county assembled in joint meeting which is to be presided over by the mayor of Florence. These five "dispensary commissioners," as they are called in the act, constituting a corporation, are to elect one of their number annually to be chairman, and another to be secretary and treasurer. Each of the commissioners is required to take and subscribe an oath that he will faithfully and honestly discharge all the duties imposed on him by the act. The secretary and treasurer is required to give bond with good and sufficient surety to be approved by the mayor and aldermen, conditioned for the faithful performance of his duties. The commissioners are to employ managers for the dispensary in Florence and its branch in East Florence, fix their compensation, which is not to be made to depend upon the amount of sales, and regulate and superintend them in carrying on the business.

The commissioners are to pay liquor license for each place of business as now required by law. Each of the commissioners is to receive a salary of fifty dollars *per*

*annum*, and that one of them who is secretary and treasurer is to receive one hundred dollars per annum additional. The commissioners are required to "appropriate the net profits of said dispensary to the city of Florence and the county of Lauderdale in such ratio as may now be received by them from existing saloon licenses." Neither the city nor the county is to put any money into the business nor is either liable for any debts incurred by the commissioners in carrying it on. The corporation constituted of the commissioners has capacity to sue, and may be sued; and this entity is to maintain and operate the dispensary from the funds arising from the sale of liquors; and in order to inaugurate the dispensary and to purchase liquors from time to time, the corporation is authorized to borrow money, or to pledge its credit. The salaries of the commissioners and the managers are to be paid out of the business. The act is in a sense of a mandatory nature, or mandatory in form rather, in its imposition of the duty to establish and carry on the dispensary upon the commissioners, yet they incur no penalty or liability of any sort for refusing or failing to establish it, and the contingency of such refusal or failure is within the expressed contemplation of the act, which contains this provision: " * * If said commissioners fail to establish such dispensary by the 15th day of July, 1901, then the board of mayor and aldermen of the city of Florence may do so under the provisions of this act." Moreover, having established a dispensary, the act expressly confers upon them "full power and authority, at any time they may see proper so to do, to suspend, or discontinue permanently said dispensary and close out all stock thereof on hand," and provides further "that if the dispensary commissioners at any time determine to permanently discontinue the dispensary, * * * * the board of mayor and aldermen of the city of Florence and the probate judge of Lauderdale county are hereby authorized to issue liquor licenses as now or hereafter provided by law, if the board of mayor and aldermen of the city of Florence does not put into operation a dispensary under this or some other act."

[Mitchell, Judge, etc. v. State *ex rel.* Florence Dispensary; and Powers v. Mayor and Aldermen of the City of Florence.]

The anomalies of this enactment apparent from the foregoing statement are numerous and striking. Under the guise of establishing and maintaining a "dispensary," by which, as we have seen, is always intended the committing and confining the liquor traffic to disinterested public and governmental agencies—the purpose and only justifying motives always being to conserve the morals and good order of the community, and never being primarily pecuniary profit or benefit to the agency, or to the local or general body politic, the State, county or town—the act commits this traffic in Florence and throughout Lauderdale county to a corporation created by it, and constituted by it of certain named individuals whose only connection with any recognized governmental agency or power is that these individuals are named by the State, and their successors are to be appointed by the county and city legislative bodies acting jointly, and that they are required to pay the net proceeds, the profits, of the business to the city and county. Neither the city nor the county engages in the business or has any control over it beyond naming successive members of the corporation. The act creates a corporation and breathes into it a standing in the courts, a capacity to borrow money and to incur debts, and launches it upon a precarious mercantile venture without a cent of money to inaugurate the business or a cent's worth of property to form a basis of credit. License taxes are to be paid by this concern, the dispensers—managers—are to be paid by it, the salaries of its own members are to be paid by it; and all these payments must be made out of the profits of the business. Moreover, rents are to be paid, and the money borrowed and debts incurred in setting up and conducting the business are to be paid out of it; and while the commissioners are not personally liable for debts incurred, they would naturally have a lively individual concern to have them paid and the credit of the artificial entity composed of them maintained, and they as well as the managers have a direct personal concern in this connection, since without the payment of debts the business could not be prosecuted and their salaries would cease.

So that it is clear that each and all these commissioners and the managers have direct personal, pecuniary interests, and the commissioners an additional personal concern of a moral nature, in this business, in its continuance, in its profitableness, in its volume, *in increasing the sales of the dispensary.* All this is out of all harmony with the theory, and motive, and public policy of dispensary legislation. So, too, are the further provisions of this act which virtually leave the establishment of the dispensary in the first instance to the discretion of these commissioners, and expressly confer upon them the power and authority to suspend it for any length of time they see fit, and to discontinue it permanently if they choose so to do. Whatever legislation of this character, that is for the committing of this traffic to dispensaries, has been had—in this State and out of it, as far as we are advised—it has proceeded on the theory that the public alone should be interested in the business, that the State, county or municipality, as the case might be, should engage in the business, should supply the funds to inaugurate it and carry it on, should with public funds pay the dispensers or other necessary agents so that they would be wholly disinterested and without incentive to exploit the traffic or to increase its volume, and should, while on the one hand receiving whatever profits might incidentally result from thus on principles of public policy controlling and carrying on a traffic requiring police regulation and, in a sense, repression, on the other, incur and bear the losses which might result from the business. And it is, to say the least, largely upon this theory that the courts have upheld such legislation. Can legislation not proceeding upon this theory be upheld? Can an act which departs from this theory so radically as the act under consideration be sustained at all? The exigencies of the present appeal do not require us to respond to these queries.

Again, leaving out of view the considerations just adverted to, or rather dealing with them from another standpoint, it is obvious that an act proceeding on the general lines upon which this one proceeds might amount

to an arbitrary designation by the legislature, or by the commissioner's court of a county and the board of mayor and aldermen in a town in that county, of private persons or a private corporation to carry on the liquor traffic to the exclusion of all other private persons and private corporations in palpable violation of fundamental law. For illustration: Suppose it were a fact that the net profits of the liquor business in Florence and East Florence were ten thousand dollars, and this act had provided a salary of two thousand dollars for each of these five commissioners, would any court hesitate to declare that such a statute would be the conferring of a special privilege on these men or this close corporation composed of them, that it would be invidious and class legislation and unconstitutional and void? Would not such a statute be clearly for the benefit of these individuals, exclusive of the equal right of other individuals to engage in this business? We do not know what the profits of these dispensaries are. They may, for aught we know to the contrary, not exceed the three hundred and fifty dollars to be paid to these commissioners. And can it make any difference what the commissioners are to receive out of the business when they in fact are to receive all its issues and profits, when they, and not the State, nor the county nor the city, inaugurate it and supply the funds for prosecuting it, and themselves, to the exclusion of all others equally entitled to engage in the traffic under organic guarantees, carry it on and receive the proceeds of it? Can the legislature, indeed, thus provide for the farming out of this traffic to persons named by itself or to be named by the county and town authorities upon conditions involving merely the payment of some part of the proceeds to the county and town, and forbid other persons to engage in the traffic at all? These, too, are questions which we are not under the necessity of answering.

This act has infirmities of a more glaring and certainly emasculating nature than those we have been discussing. To our minds it palpably involves an unwarranted and unconstitutional delegation of legislative power.

[Mitchell, Judge, etc. v. State *ex rel.* Florence Dispensary; and
Powers v. Mayor and Aldermen of the City of Florence.]

and incidentally so to speak, the conferring of police power, to and upon the dispensary commissioners named in the act and their successors. Whether the act should go into effect and operation at all or not was left to all essential intents and purposes to their uncontrolled discretion. They might be unable to raise funds or secure credit necessary to inaugurate the dispensary and for that reason fail to establish it. Or they might, without any reasons apart from their own notions of the expediency and wisdom of dispensary legislation, refuse and fail to execute the act. If they failed to establish the dispensary for any reason or for no reason, we are not of opinion on the terms of this act that they could be thereunto compelled. Indeed, the appointees of the act were under no duty to qualify and undertake its execution, and they might have declined to do so. No provision is made for such a contingency and its occurrence would have effectually prevented the act from ever going into effect. But the legislature not only committed the question as to whether this act should ever go into operation to five named private persons, but it went further and expressly provided that these same persons, they having concluded to put the act into operation, could *suspend* it at any time, and could also *repeal* it in substance and effect whenever they chose so to do by permanently discontinuing the dispensaries; and that upon such repeal other important laws should revive and become operative in Florence and throughout Lauderdale county. Upon a mere *suspension* of the dispensary by these commissioners, there would be absolute prohibition of the liquor traffic in Lauderdale county. The suspension might be for a week, or a month, or a year, yet if it was a suspension only, that is, if the commissioners intended to resume the business of the dispensary at the end of the week, or month, or year, as the case might be, the effect of the exercise by them of the power to suspend conferred by this act would be not only to suspend a law of the State, but to establish prohibition throughout the territory covered by the act for the time of suspension, be it short or long. If they

chose to "discontinue permanently the dispensary," that
is, ceased to carry it on with the intention not to re-
sume its business, they thereby put into operation the
license laws of the State and of the city, and thus au-
thorized the unlimited traffic in liquor throughout the
county. In other words, and in short, this act delegated to
these five persons the legislative power of determining
whether it should ever become a law and go into effect,
the legislative power of suspending it at any time and
for any length of time, they having concluded to make
it a law and put it in operation, and the further legis-
lative power of repealing it by determining to discon-
tinue the dispensary proposed to be established.  And
the exercise of each of these important rights of elec-
tion on the part of these five men, or a quorum of them,
necessarily has the effect of controlling the State's pol-
icy in respect of this traffic in Lauderdale county; and
the conferring of these rights is in reality delegating to
them to determine which of the three possible policies
should be enforced by legislation—whether there should
be unlimited sales under license, or sales through the
dispensary system, or absolute prohibition of all sales.
And, of course, the exercise of this delegated legislative
power to the results we have indicated necessarily in-
volved the exercise of the police power of the State in re-
spect of this traffic in liquors.  Whether the sale of liq-
uors in Lauderdale county should be free and unlim-
ited, or whether it should be prohibited, or whether it
should be permitted but regulated, and if regulated,
whether by the requisition of licenses or through public
agencies called dispensaries, were matters and questions
with which the legislature alone was competent to deal.
The whole subject is legislative and is committed to the
general assembly.  They cannot "substitute the judg-
ment, wisdom and patriotism of any other body for
those to which alone the people have seen fit to confide
this sovereign trust;" and much less can they substi-
tute for their own the judgment, patriotism and wisdom
of five private persons.  Of course the legislature may
enact a local statute to go into effect upon its adoption,
or, rather, acceptance by the people of the locality to

which it is to apply, or they may confer certain powers
of local legislation upon public political corporations;
but they cannot delegate to Brown, Jones, Smith, John-
son and Roberts, private persons, the power to say
whether a statute framed for and to affect the county and
all the people of the county in which these persons may
live, shall go into effect, in fact become a law, nor can
they delegate to these persons the power to suspend for
a moment of time the operation of a statute which has
gone into operation, or to repeal it; and they cannot con-
fer upon these persons directly or indirectly the power
of determining what police regulations shall obtain in
the county in respect of intoxicating liquors; nor can
any of these powers be delegated to a corporation con-
stituted of these persons and charged with the duty of
administering this act should it elect to put it into opera-
tion and so long as it refrained from suspending or re-
pealing it.—6 Am. & Eng. Ency. Law, pp. 1021 *et seq.;*
*Schultes v. Eberly,* 82 Ala. 242; *Clark & Murrell v. Port
of Mobile,* 67 Ala. 217; *Dunn v. Court of County Reve-
nues,* 85 Ala. 144; *Stanfill v. Court of County Revenue,*
80 Ala. 287.

This is not a case for the elimination of the unconsti-
tutional provision which we have been considering from
the act and leaving it to stand in other respects. It is
far from reasonable to suppose that the legislature
would have peremptorily required the persons named in
the act to form a penniless corporation and launch it
upon a perilous mercantile venture, and peremptorily
held them to the prosecution of that venture regardless
of their ability and inclination to inaugurate it or con-
tinue its operations. Indeed, the legislature had no
power to do this. With the eliminations referred to
made, there is not only no reason to believe the act
would have been passed, and no ground for saying that
it could now be executed in accordance with legislative
intent, but it would still be impotent to force the com-
missioners, or the corporation composed of them to its
continued execution: there would still be no legel as-
surance against their suspending or permanently dis-

continuing the dispensary. Moreover, the elimination of these provisions and the consequent giving of a peremptory and mandatory character to the act, would involve also, it would seem, the alternate dependent provisions as the issuance of licenses, or the establishment of a dispensary by the city of Florence in the event the commissioners should fail to establish a dispensary or permanently discontinue it.

Upon the foregoing considerations we are constrained to declare the act in question unconstitutional and void. It follows that the probate judge of Lauderdale county was under no duty to issue any licenses to the dispensaries which had been established by the commissioners, and hence was not compellable by *mandamus* to issue licenses to them for the last quarter of the year 1901. The judgment of the circuit court awarding *mandamus* against him must, therefore, be reversed, and a judgment will be here entered dismissing the petition for *mandamus*.

The ordinance of the city of Florence for violating which the appellant Powers was convicted not only expressly refers to this invalid dispensary act as the sole authority for its adoption, but it, also expressly, excludes the dispensaries and sales made by them from its operation. The dispensary act being stricken down, the ordinance stands before the higher law as if it had in terms confined the sales of intoxicating liquors to seven named persons, the dispensary commissioners and managers and prohibited such sales by other persons. It is impossible to conceive how the ordinance can be enforced according to the intent of the mayor and aldermen of Florence, or that it would have been adopted by them at all for enforcement as it must be enforced if allowed to stand for any purpose, that is, against the persons expressly excluded from its operation as well as against all other persons. It is not a case of an ordinance good and bad in separable parts, but of one in which the infirmity of invidious, partial and unequal effect and operation affects and destroys the whole. The ordinance must fall with the statute upon the supposed authority of which it was adopted; and the judg-

ment against Powers for an alleged violation of it must be reversed—the question of the invalidity of the ordinance having been properly presented on the trial and reserved for review—and a judgment will be here entered discharging him from further prosecution.

Reversed and rendered in each case.