Argued on demurrer to alternative writ September 19, 1919; demurrer overruled January 13, 1920.

STATE EX REL. *v.* HINES, DIRECTOR-GENERAL OF THE UNITED STATES RAILROAD ADMINISTRATION.

(186 Pac. 420.)

Constitutional Law—Constitutionality of Statute may be Determined by Mandamus.

1. The constitutionality of an act may be tested in an original *mandamus* proceeding.

Commerce—Inspection—Legislature can Require Inspection of Hides as Condition for Shipment by Common Carrier.

2. To detect and prevent stealing of livestock, the legislature may enact a law for the inspection of hides as a condition of their shipment within or without the state by a common carrier.

Inspection—Exception in Statute Requiring Inspection of Hides for Shipment Destroys Effect in Sparsely Settled Country—"Farmer"—"Ranch."

3. A "farmer" is one who resides on and cultivates a farm, mainly deriving his support therefrom, and a "ranch" is a tract used for grazing and rearing livestock; so that, assuming that "farmer" and "ranch owner" have a specific legal meaning as used in Laws of 1919, page 732, Section 3, excluding farmers, ranch owners, and small isolated dealers from the requirement of inspection of hides as a condition to their shipment by common carrier, then the protection from theft intended by such statute is denied to the sparsely settled and isolated sections of the state.

Constitutional Law—Statute Providing for Its Taking Effect upon Request of Stock Raisers' Association Invalid as Delegation of Power.

4. Laws of 1919, page 732, Section 3, making it unlawful to transport hides by common carrier without inspection and suspending the operation of the law in Multnomah County so long as a state brand and livestock inspector appointed by the Governor under Laws of 1915, page 43, Section 16, providing for such appointment upon request of the Cattle and Horse Raisers' Association, is maintained therein, is unconstitutional as a delegation of legislative power to such association, in view of Article IV, Section I, of the Constitution, prohibiting delegation of legislative authority and Article I, Section 21, prohibiting laws taking effect upon any authority except as provided by the Constitution.

Original proceedings in *mandamus* in Supreme Court.

In Banc.

This is an original proceeding for a writ of *mandamus*, in which the relator alleges that it is a corporation organized and existing under the laws of the State of California, duly licensed to transact business in Oregon and engaged in buying and selling hides; that its principal office and main warehouse in Oregon is in the City of Portland; that at all the times alleged the defendant has been and is now director-general of the United States Railroad Administration, operating the lines of the Oregon-Wash. R. & N. Company east of Portland and those of the Southern Pacific Company north of Ashland; that such lines are engaged in business as common carriers of freight and passengers; that the Oregon-Wash. R. & N. Company connects by rail the cities of Portland and Pendleton, and the Southern Pacific lines north of Ashland connect the cities of Portland and Eugene, Oregon; that in carrying on its business the relator buys and sells many thousands of dollars' worth of hides annually and employs agents who are constantly traveling throughout the state, engaged in purchasing and ship-

ping them to the relator by rail from various points in the state to the City of Portland.

The petition states that on September 3, 1919, L. C. Penroid, who was then and is now one of the relator's agents, took four bundles of green salted calf-skins, weighing 232 pounds, to the freight office of the Oregon-Wash. R. & N. Company at Pendleton and tendered them to F. F. O'Brien, who was then and is now the agent of said company at that place, for the purpose of shipping such hides to Bissinger & Company at Portland, Oregon. It is claimed on behalf of the relator that the hides were properly packed and wrapped for shipment, and the relator had complied with all the regulations of the defendant covering shipments of this character; and that the relator's agent requested O'Brien as agent of the defendant to receive the said hides and transmit them by freight over the Oregon-Wash. R. & N. lines to Portland, and tendered the proper charges therefor. It is then charged that O'Brien, acting under the instructions of the defendant and in direct violation of his duty as agent of a common carrier, refused to accept the hides for shipment, on the ground that he had not been furnished with a certificate from the stock inspector of Umatilla County, as purports to be required by a law passed by the legislative assembly of 1919: Laws of 1919, Chapter 404, page 732, being an act "to provide for the inspection of cattle hides and fixing the fees and providing for penalties for violation of same." Further allegations are to the effect that the defendant then refused and still refuses to accept said shipment or to deliver the hides as requested and demanded by the agent of the relator.

Like charges are made concerning a tendered shipment of about 300 pounds of hides by Charles E.

Hursh, one of the relator's agents, from Eugene, Oregon, to Portland, and of the refusal and continued objection of A. J. Gillett, freight agent of the Southern Pacific Company at Eugene, to accept the hides for delivery to the relator in Portland.

The act in question is here set out:

"Section 1. Every dealer in or commercial seller of hides desiring to ship or otherwise transport the same within or without this state, shall, before doing so, furnish to the stock inspector in the county in which the same are to be loaded, a certificate describing fully the hides to be shipped by him by giving the number, brands and flesh marks on each of said hides, the name and address of the owner, of the shipper and of the consignee and also certify that he is either the owner or entitled to the lawful possession of said hides. If the certificate and other evidence furnished the inspector satisfies said inspector that such person is the owner or entitled to the lawful possession of said hides, he shall record the data furnished him in said certificate in a book to be furnished for that purpose by the county commissioner of each county and shall furnish a certificate in duplicate to the common carrier requested to ship said hides, one copy of which shall be kept on file by said common carrier, in its office at the place of shipment, which certificate must at all times during business hours be accessible to the public, and the other shall be attached to the bill of lading and delivered to any duly authorized stock inspector demanding the same, at the point of destination. If said stock inspector in the county from which said hides are desired to be shipped shall not be satisfied that the person desiring to ship said hides is the owner or in lawful possession thereof he shall not issue the certificate aforesaid, nor permit said hides to be shipped.

"Section 2. Said inspectors shall be paid for their services by the owner or person in charge of said hides the sum of 10 cents per hide on the first twenty-five hides or less number included in any lot so in-

spected and the sum of 3 cents per hide for all over and above twenty-five hides in such lot, and in addition thereto the said inspector shall be paid by the owner or person in charge of said hides the sum of 10 cents per mile one way for the distance he must travel in order to make such inspection.

"Section 3. It shall be unlawful for any common carrier to transport any hides out of this state, or to any other county within the state, without complying with section 1 of this act, and any common carrier who violates the provisions of this act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not less than $100 nor more than $1,000 and shall be responsible for damages to any person injured in treble the damages, costs and attorney fees; provided, that this act is not to be deemed to apply to farmers or ranch owners who slaughter their own animals, or to small, isolated dealers who purchase and ship hides to central dealers; provided further, that Multnomah County, Oregon, is to be exempt from the terms of this act so long as a state brand and livestock inspector is maintained at the Union stockyards, North Portland, Oregon."

The petition sets out that Multnomah County is exempt from the provisions of the act "so long as a state brand and livestock inspector is maintained at the Union stockyards, North Portland, Oregon"; that such brand and livestock inspector has been maintained at said Union stockyards during all the times mentioned; that the legislative enactment is in conflict with the requirements of the Constitution of Oregon and is void and of no effect; and that the "relator has no plain, speedy or adequate remedy at law in the premises," wherefore it prays for a writ of *mandamus* directed to the defendant, requiring him and his agents to receive and ship the said hides from both Pendleton and Eugene, Oregon. An alternative

writ was issued, to which a demurrer was filed, on the ground that it did not state facts sufficient to entitle the relator to relief; and that is the only question presented.          Demurrer Overruled.

For relator there was a brief over the names of *Mr. Hall S. Lusk* and *Messrs. Dolph, Mallory, Simon & Gearin*, with an oral argument by *Mr. Lusk*.

For defendant there was a brief over the names of *Mr. John F. Reilly* and *Mr. Arthur C. Spencer*, with an oral argument by *Mr. Reilly*.

There was a brief and an oral argument by *Mr. George M. Brown*, Attorney General, *Amicus Curiae*.

JOHNS, J.—1. Much of the original relator's brief is devoted to the question of whether or not the constitutionality of the act can be tested in a *mandamus* proceeding. That matter is not controverted by the defendant, and the weight of authority sustains the relator.

2. The case of *New Mexico ex rel. E. J. McLean & Co. v. Denver & Rio Grande R. R. Co.*, was first decided by the Supreme Court of New Mexico, 12 N. M. 425 (78 Pac. 74, 79 Pac. 295), and later affirmed by the United States Supreme Court, 203 U. S. 38 (51 L. Ed. 78, 27 Sup. Ct. Rep. 1, see, also, Rose's U. S. Notes). In 1884 the territory of New Mexico enacted a law providing that all butchers should keep a record of all animals slaughtered and should keep the hides and horns free for inspection for thirty days. This law was later amended to provide that any inspector employed by the sanitary board should have the right at any time to enter any slaughter-house or other place where cattle were killed, to examine the same,

and the books and records required to be kept therein, and to compare the hides found with such records. In 1901 Section 3 was added to the original act, reading thus:

"Hereafter it shall be unlawful for any person, firm or corporation to offer, or any railroad company or other common carrier to receive, for the purpose of * * transportation beyond the limits of this Territory, any hides that have not been inspected and tagged by a duly authorized inspector of the cattle sanitary board of New Mexico, for the district in which such hides originate."

It was vigorously contended that the whole law, this section in particular, was unconstitutional, but such claim was overruled by both decisions, the Supreme Court of the United States saying:

"The purpose of these provisions is apparent, and it is to prevent the criminal or fraudulent appropriation of cattle by requiring the inspection of hides and registration by a record which preserves the name of the shipper and purchaser of the hides, as well as the brands thereon, and by which is afforded some evidence, at least, tending to identify the ownership of the cattle. It is evident that the provision as to the shipment of the hides beyond the limits of the Territory is essential to this purpose, for if the hides can be surreptitiously or criminally obtained and shipped beyond such limits, without inspection or registration, a very convenient door is open to the perpetration of fraud and the prevention of discovery. * *

"We see no reason why an inspection law which has for its purpose the protection of the community against fraud and the promotion of the welfare of the people cannot be passed in the exercise of the police power, when the legislation tends to subserve the purpose in view. In the Territory of New Mexico, and other parts of the country similarly situated, it is highly essential to protect large numbers of people against criminal aggression upon this class of prop-

erty. The exercise of the police power may and should
have reference to the peculiar situation and needs of
the community. The law under consideration, de-
signed to prevent the clandestine removal of property
in which a large number of the people of the Territory
are interested, seems to us an obviously rightful ex-
ercise of this power."

3. There is no legal question about the right of the
legislature to enact a law for the inspection of hides
as one condition of their shipment by a common car-
rier. It will be found upon an examination of the
New Mexico law that there are no exceptions or res-
ervations in the original act or any amendment there-
to. It must be remembered that Section 3 of the act
of 1919 provides, "that this act is not to be deemed
to apply to farmers or ranch owners who slaughter
their own animals, or to small, isolated dealers who
purchase and ship hides to central dealers." 3 Words
& Phrases, page 2699, defines the word "farmer" as
"one who resides on a farm with his family, culti-
vating such farm and mainly deriving his support
from it." Webster defines the word "ranch" as "a
tract of land used for grazing and the rearing of
horses, cattle or sheep." Assuming that the words
"farmer" and "ranch owner" have a certain, specific
legal meaning, how can a common carrier determine
whether or not the consignor of hides is a farmer or
ranch owner who has slaughtered his own animals, or
that he is a small or isolated dealer; or that the con-
signee is a central dealer? Yet under the provisions
of the act all of such individuals have a right to have
hides shipped without inspection. As stated, the pur-
pose of the law is to detect and prevent the stealing
of livestock. It is a matter almost within the judicial
knowledge of this court that from the very nature of

things the stock "rustler" largely conducts his nefarious operations in sparsely settled country and isolated sections, where hides from stolen stock would have their origin of shipment. But such portions of the state are denied the benefits of the protection intended to be provided by the act.

4. To arrive at the true meaning of the exemptions embraced in Section 3 of the act of 1919 above quoted, reference must be made to Section 16 of Chapter 33, Laws of 1915, reading thus:

"The governor shall at any time after the passage and approval of this act, upon request of the Cattle & Horse Raisers' Association of Oregon, appoint a stock inspector or inspectors for any stock yard or yards in the state of Oregon, the compensation of such stock inspector or inspectors to be agreed upon and paid by said Cattle & Horse Raisers' Association of Oregon. * * "

It will be noted that by Section 3 of Chapter 404, Laws of 1919, "Multnomah County, Oregon, is to be exempt from the terms of this act so long as a state brand and livestock inspector is maintained at the Union stockyards, North Portland, Oregon." That is to say, a stock inspector for Multnomah County is to be appointed by the Governor, at the request of the Cattle & Horse Raisers' Association and on condition that the association pay for his services. Hence, it must follow that if the association does not make the request, or declines to pay for the services of the inspector, Multnomah County would not have an inspector and would not be exempt from the requirements of the act. When these two sections are construed together, it is a matter entirely in the discretion of the Cattle & Horse Raisers' Association as to whether or not Multnomah County shall be exempt

from the provisions of the act of 1919.' It is contended that this is a delegation of the legislative power and for that reason is unconstitutional. Section 1 of Article IV of the Constitution says:

"The legislative authority of the state shall be vested in a legislative assembly, consisting of a senate and house of representatives. * * "

And Article I, Section 21, reads thus:

"No *ex post facto* law or law impairing the obligations of contracts, shall ever be passed, nor shall any law be passed, the taking effect of which shall be made, to depend upon any authority, except as provided in this constitution. * * "

These latter sections have been construed by this court in the case of *Portland* v. *Coffey,* 67 Or. 507 (135 Pac. 358), where it was held:

"If a statute is complete within itself when it comes from a legislative assembly, it is a general law and effective throughout the entire state, though its operation in particular localities may be made to depend upon a majority vote of the qualified electors thereof: Elliott, Elements Mun. Corp., Section 60.

"The principle thus announced is well recognized in this state, where it has been held that a general statute, complete in itself, requiring nothing else to give it validity, could be made applicable to a particular section by a vote of the qualified electors: *Fouts* v. *Hood River,* 46 Or. 492 (81 Pac. 370, 7 Ann. Cas. 1160, 1 L. R. A.' (N. S.) 483). The application of the act under consideration is not made to be appropriated to any particular district upon any vote of the people, who are regarded as the source from which legislative authority emanates, but the validity of the enactment is to depend upon a decision of the Supreme Court. This is, in effect combining independent departments of the state government which the organic law declares shall be kept separate: Article III, Section 1, of the Constitution of Oregon."

The same doctrine is sustained in *Slinger* v. *Henneman*, 38 Wis. 504, and *Mitchell* v. *State*, 134 Ala. 392 (32 South. 689). Therein lies the distinction between the instant case and the authorities cited by the defendant.

In its present form, Chapter 404, Laws of 1919, is a delegation of the legislative power to the Cattle & Horse Raisers' Association of Oregon. We hold that the act as it now stands is unconstitutional and void.

The demurrer is overruled and the writ is sustained.

DEMURRER OVERRULED.

BEAN, J., was not present at the hearing.

BENNETT, J., does not express any opinion.